UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                      )
DARLENE C. ROBINSON,                  )
                                      )
         Plaintiff,                   )
                                      )
    v.                                )
                                      )        Civil Action No. 11-0723 (ESH)
WASHINGTON METROPOLITAN               )
AREA TRANSIT AUTHORITY,               )
                                      )
         Defendant.                   )
_____)

## MEMORANDUM OPINION

On April 16, 2008, plaintiff Darlene Robinson boarded a Metrobus operated by an employee of Washington Metropolitan Transit Authority ("WMATA").   (Compl. ¶ 4.)   Before she reached her seat, she fell and injured her ankle.   She has filed suit against WMATA for negligent operation of the bus.   Before the Court is WMATA's Renewed Motion for Summary Judgment and Motion to Dismiss.   ("Def.'s Renewed Mot.")

## BACKGROUND

### I.    FACTS

The facts here are largely undisputed.   On April 16, 2008, near the intersection of 11th Street and Gallatin Street, NE, Robinson boarded Bus No. 2170, an E-2 Metrobus operated by WMATA employee Ronald Bumpass.   (Compl. ¶ 4; Def.'s Mot. for Summ J. ("Def.'s First Mot."), Ex. 2 ("Accident Report Form") at 1-2.) [1]   There were approximately seven passengers

---

[1] In its Renewed Motion for Summary Judgment and Motion to Dismiss, WMATA has incorporated by reference its first motion for summary judgment.   (*See* Def.'s Renewed Mot. at 2.)   In its opposition, plaintiff has also incorporated by reference her response to WMATA's first motion for summary judgment.   (*See* Pl.'s Opp'n to Def.'s Renewed Mot. for Summ. J. ("Pl.'s Opp'n to Renewed Mot."), Ex. 1 at 1.)

on the bus at that time.  (Accident Report Form at 1.)  After Robinson paid her fare, she walked

down the bus aisle looking for a seat.  (Def.'s First Mot., Ex. 3 ("Robinson Dep.") 43:9-43:16.)

By the time eight to ten seconds had elapsed, she was standing about halfway down the bus aisle

with her hand holding a handrail on the back of one of the seats.  (*Id*. 39:22-44:9, 52:14-53:13.)

At that point, she fell and injured her left ankle.  (*Id*. 52:14-53:13.)

> The bus was moving when Robinson fell.  According to the plaintiff, it was going "faster

than the normal bus trip" (*id*. 91:14-92:3) and moving with "sudden jerk speed."  (*Id*. 102:9-

102:11.)  She testified that someone yelled "slow down" and the bus driver abruptly pressed the

brakes.  (*Id.* 44:3-45:13; 100:5-100:22.)   As a result, her body twisted, her hand slipped off the

handrail, and she fell with her leg twisted under her.  (*Id.* 45:10-45:13; 102:5-102:22.)

> During this time, Bumpass was sitting in the driver's seat, facing the windshield, and he

did not see her walk down the aisle or fall.  (Pl.'s Opp'n to First Mot., Ex. 3 ("Bumpass Dep.")

50:20-51:2.)  At his deposition, Bumpass testified that he did not look behind him or check the

interior mirrors before he pulled away from the bus stop.  (*Id*. 50:20-51:2.)  After plaintiff paid

her fare, the next time that he was aware of her was when another passenger approached him and

told him that Robinson had fallen.  (*Id*. 52:4-53:4.)  When Bumpass approached her, she told him

that her ankle was hurt, but declined his offer of help and said that she was going home to call

her doctor.  (Accident Report Form at 2.)

> Plaintiff filed suit against WMATA on April 14, 2011, alleging that WMATA was liable

for the bus driver's negligence in operating the bus.  (Compl. ¶ 4.)  During discovery, WMATA

moved for summary judgment on the basis that plaintiff lacked expert testimony necessary to

establish her claims.  (Def.'s First Mot. for Summ. J.)  Subsequently, plaintiff filed a

supplemental Rule 26(a)(2) statement disclosing Carl Berkowitz as its transportation engineering

expert (Pl.'s Supp. Rule 26(a)(2) Statement ("Berkowitz Rep.")), and WMATA's motion was

accordingly denied as moot.  (*See* Minute Order of Jan. 10, 2010.)  Following the close of

discovery, WMATA has now filed a renewed motion for summary judgment and to dismiss,

arguing that the Court lacks jurisdiction due to sovereign immunity and that it is entitled to

summary judgment because plaintiff has failed to establish a prima facie case of negligence.

ANALYSIS

## I.     SOVEREIGN IMMUNITY

WMATA, which was created through the Washington Metropolitan Area Transit

Authority Compact signed by Maryland, Virginia, and the District of Columbia, *see* Pub. L. No.

89-774, 80 Stat. 1324 (1966) (codified as amended at D.C. Code § 9-1107.01 *et seq*.)

("Compact"), is entitled to share in the sovereign immunity of the Compact's signatories.  *Beebe

v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997).  WMATA's sovereign immunity is therefore

waived for "torts . . . committed in the conduct of any proprietary function," but preserved for

"torts occurring in the performance of a governmental function."  D.C. Code § 9-1107.01(80).

Courts interpreting the Compact's sovereign immunity provision apply a two-part test to

determine whether an activity enjoys its protection.  *WMATA v. Barksdale-Showell*, 965 A.2d 16,

20 (D.C. 2009).  The first part of the test asks whether a particular act is governmental or

proprietary.  *Id*.  Activity that is "quintessentially governmental" is shielded from suit by

WMATA's sovereign immunity.  *Id.*  The second part addresses activities that are not

quintessentially governmental functions; in those cases, immunity depends on whether the

activity is discretionary or ministerial.  *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir.

1997).  Only discretionary activity is protected by sovereign immunity.  *Id.*

Discretionary functions are governmental actions and decisions that are "based upon

considerations of public policy" and which require "an element of judgment or choice."

*Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). If a "'statute, regulation, or policy specifically prescribes a course of action'" for WMATA to follow, then no discretion is involved because WMATA had "no rightful option but to adhere to the directive." *Barksdale-Showell*, 965 A.2d at 21 (quoting *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991)). If there is no prescribed code of conduct and the decision involves "political, social, [or] economic" choices, it is considered discretionary. *See Burkhart*, 112 F.3d at 1217. "For a court to find that an act is discretionary, thus entitling the municipality to immunity, the court must determine that the act involves the formulation, as opposed to the execution, of policy." *Briggs v. WMATA*, 293 F. Supp. 2d 8, 12 (D.D.C. 2003), *aff'd*, 481 F.3d 839, 843 (D.C. Cir. 2007).

In the instant case, WMATA has moved to dismiss plaintiff's complaint, arguing that it cannot be held liable for Bumpass' decision to drive while Robinson was standing because its policy allowing bus drivers to operate a bus while passengers are standing is the product of a discretionary decision. (Def.'s Renewed Mot. at 9-10.) It explains that "WMATA's policy [] permit[ing] buses to continue on the route with standing passengers" is based on considerations including efficiency, customer service, and budgetary constraints. (*Id*. at 9-10.) Therefore, it argues, relying on *Burkhart*, 112 F.3d at 1216-17, it is entitled to sovereign immunity and the Court lacks subject matter jurisdiction. (*See* Def.'s Renewed Mot. at 11.)

To the extent that this policy is part of plaintiff's theory of liability, the Court agrees that defendant is immune. However, WMATA's immunity for that policy does not justify dismissal of plaintiff's complaint because her negligence claim is not based entirely on the fact that Bumpass drove away from the bus stop while she was standing. (*See* Compl. ¶¶ 3, 5, 6-7.)

Here, as in *Washington Metro. Area Transit Auth. v. O'Neill*, plaintiff does not challenge WMATA's rule itself, but rather claims "that the bus driver was negligent in not following

WMATA's safety directives."   633 A.2d 834, 838 (D.C. 1993).[2]  Specifically, she argues that

Bumpass was negligent—and breached the WMATA Standard Operating Procedures

("SOPs")—in at least two ways.

First, Bumpass failed to comply with WMATA's rule that he "[c]heck that passengers are

secure and prepared for vehicle movement."  (Pl.'s Opp'n to Renewed Mot. at 13.)  It is true, as

defendant notes (Def.'s Renewed Mot. at 4), that Robinson complains about Bumpass not

waiting to drive until she sat down, as bus drivers often do, but her negligence claim does not

hinge on the fact that he did not wait.  Instead, she attacks his failure to check on passengers at

all since he did not look to see if she was secure.  (*See* Pl.'s Opp'n to Renewed Mot. at 2-7, 13-

15.)   Notably, defendant does not claim that this lapse was part of WMATA policymaking or

necessarily compliant with its policies.  In fact, defendant has proffered testimony which tends to

support plaintiff's argument that Bumpass had an obligation to check on his passengers before

moving.  (*See* Def.'s Reply to Pl.'s Opp'n to Renewed Mot. for Summ. J. and Mot. to Dismiss

("Def.'s Reply"), Ex. 1 ("Harris Aff.") ¶ 4) ("By th[e]requirement [(that the bus operator check

that passengers are secure and prepared)], the bus operator should be generally aware that

passenger[sic] are in a position to hold on to one of numerous vertical and horizontal poles

located around the fare box, along the aisle, and on top of most seats of the bus.")   Moreover,

defendant does not dispute the fact that Bumpass was required to perform some "check" so as to

"be generally aware" of Robinson's whereabouts, which he admits that he did not do.[3]

---

[2] Therefore, her "suit does not interfere with WMATA's judgment as to the appropriate
response . . . to be followed by its drivers in dealing with" passengers who choose or are forced
to stand rather than sit.  *Id.*

[3] Although defendant states that a bus driver is "not required to maintain a constant watch of a
passenger on the bus while the bus proceeds through traffic" since it must also watch traffic, its
side mirrors, and the road ahead (Harris Aff. ¶ 5), there is no evidence that the existence of these
competing considerations gives the bus driver discretion to ignore the directive that it "[c]heck to

Therefore, WMATA cannot claim that his decision to violate its policy is entitled to immunity. *See O'Neill*, 633 A.2d at 839 ("WMATA's sovereign immunity did not bar this suit premised on the alleged negligence of its driver in carrying out express safety directives intended for the protection of its passengers.").

Second, Robinson challenges  Bumpass' failure to follow WMATA's directive that bus drivers "[s]tart gradually, stop smoothly, and turn slowly" (*see* Pl's Opp'n to Renewed Mot. at 15; Pl.'s Opp'n to First Mot., Ex. 1 (excerpt from SOPs handbook) at 7) by accelerating and decelerating in a "very fast" and "jerky" way.  Again, defendant does not claim that Bumpass' action was part of its discretionary decisionmaking and therefore it is not entitled to immunity on this aspect of plaintiff's claim.  Thus, unlike *Burkhart,* 112 F.3d at 1216-17, plaintiff here has pointed to policies that "specifically prescribe[]" guidelines for passenger safety which, on their face, leave Bumpass no choice but to adhere.  *See O'Neill*, 633 A.2d at 838.

Finally, this is not a case in which the SOPs have left these decisions to Bumpass.  *Cf. Barksdale-Showell*, 965 A.2d 16, 22-23 (D.C. 2009) (finding that WMATA's internal operating procedure permitted discretionary decisionmaking where it directed an action "if possible"); *Robinson v. WMATA*, 676 A.2d 471, 473-75 (D.C. 1996) (contrasting use of mandatory versus permissive language in WMATA's SOPs and concluding that, since the employee was not required to take specific action, decision was discretionary); *Gaubert*, 499 U.S. at 324 ("I]f a regulation allows the employee discretion, the existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.").

---

ensure that passengers are secure and prepared for movement."  (Pl.'s Opp'n to First Mot., Ex. 1 (excerpt from SOPs handbook) at 5).

Ultimately, plaintiff's suit is not barred by sovereign immunity because defendant does not—nor could it— claim immunity for Bumpass' alleged failure to follow WMATA's directives. However, defendant's motion to dismiss the complaint is granted to the extent that the suit challenges WMATA's policy of allowing drivers to proceed with standing passengers.

## II.    SUFFICIENCY OF PLAINTIFF'S EXPERTS

In its renewed motion for summary judgment, WMATA argues that plaintiff has not made out a prima facie case of negligence. To establish negligence, "the plaintiff has the burden of proving by a preponderance of the evidence the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between the deviation and the plaintiff's injury." *Varner v. Dist. of Columbia*, 891 A.2d 260, 265 (D.C. 2006) (internal quotation marks omitted). Here, WMATA argues that summary judgment is warranted because plaintiff has not established a national standard of care against which its actions can be judged, nor has she shown a deviation from that standard, *i.e.*, negligence. (Def.'s Renewed Mot. at 11-15; Def.'s Reply at 1-2, 3-6.)

### A.    Expert on Standard of Care

To establish the standard of care, a plaintiff must put on expert testimony "'if the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson.'" *Briggs*, 481 F.3d at 845 (quoting *Dist. of Columbia v. Arnold & Porter*, 756 A.2d 427, 433 (D.C. 2000)). "The D.C. Court of Appeals has required expert testimony in a number of cases that, on first blush, appear to be within the realm of common knowledge." *Briggs*, 481 F.3d at 845 (collecting cases).

When expert testimony is required, the expert must identify a "concrete standard upon which a finding of negligence could be based." *Dist. of Columbia v. Carmichael*, 577 A.2d 312, 315 (D.C. 1990). The expert must clearly articulate what the standard is and how it was violated

by the defendant, which is to be done by comparing "specific standards with specific facts or

conduct." *Id*.; *see also Butera v. Dist. of Columbia*, 235 F.3d 637, 659 (D.C. Cir. 2001) ("The

expert must refer to commonly used . . . procedures, identifying specific standards by which the

jury could measure the defendant's actions."); *cf.  Dist. of Columbia v. Moreno*, 647 A.2d 396,

400-01 (D.C. 1994) (rejecting expert testimony that "briefly referred to standards without

eliciting what the standards are or what they require").   "Thus the expert must clearly relate the

standard of care to the practices in fact followed by other comparable governmental facilities or

to some standard nationally recognized by such units." *Clark v. Dist. of Columbia*, 708 A.2d

632, 635 (D.C. 1997).  Neither personal opinions nor unsupported generalizations provide a

permissible basis for the expert's articulation of the applicable standard of care. *See Travers v.

Dist. of Columbia*, 672 A.2d 566, 569 (D.C. 1996); *Messina v. Dist. of Columbia*, 663 A.2d 535,

538 (D.C. 1995).

 Here, plaintiff's proposed expert on passenger safety standards for transportation systems

is Carl Berkowitz, who has worked as a public transportation engineer for over thirty years,

including four years as the highest ranking civil service engineer in the New York City Transit

system. (Berkowitz Rep. at 1.) [4]   He has multiple degrees, including a Ph.D in Transportation

Planning and Engineering from Polytechnic Institute of New York University, has held

numerous teaching positions, has published academic and news articles, and is a member of

various industry associations.  (*Id*. at 3-4.)  In his expert report, Berkowitz indicated that he had

relied upon the following information in determining that the WMATA SOPs reflected the

---

[4] Berkowitz is an engineer licensed in New York and New Jersey.  (*Id*.)  Although he is not
licensed in the District of Columbia and is nonetheless testifying in a District of Columbia case,
which arguably contravenes D.C. Code § 47-2853.04 (24) (*see* Def.'s Renewed Mot. at 17-18),
the Court declines defendant's invitation to disqualify him on this basis since he has the requisite
"specialized skills and training to perform the services offered" as an expert.  D.C. Code § 47-
2853.04 (24).

national standards for safe transport of passengers: research done by professional organizations including the American Society of Civil Engineers (*id.* at 17), the Transportation Research Board of the National Academy of Science (*id*. at 21-22 (including recommended guidelines for improving passenger safety); and the American Public Transit Association (including manuals and recommendations for public transit systems and transit worker training) (*id*. at 23-24).  In his deposition, he explained that his opinion is also based on his participation in research conferences attended by representatives of the "big five" transit agencies (*i.e*., five of the largest transportation systems in the United States: Chicago, Boston, New York, Philadelphia, Atlanta). (*See* Pl's Opp'n to Renewed Mot., Ex. 2 ("Berkowitz Dep.") 104:1-105:10.)   It was based on this industry-wide collaboration that WMATA had developed the SOPs.  (*See id*.; *see also* Berkowitz Rep. at 5-6.)  Applying the national standard to plaintiff's case, he concluded that Bumpass deviated from the standard of care by: failing to monitor and observe passengers' readiness for movement before driving away; failing to provide any audible communication to the plaintiff that he intended to drive away: and failing to ensure that the bus moved in a safe way due to his abrupt acceleration and braking.  (*Id*. at 24-26.)

WMATA argues that Berkowitz' testimony is insufficient because he does not identity a national standard beyond WMATA's SOPs, which are merely internal guidance.  (Def.'s Renewed Mot. at 13.)  However, this argument fails because Berkowitz has, contrary to WMATA's contention, articulated and referenced a national standard of care by which defendant's actions can be measured.  WMATA is correct that Berkowitz' report references WMATA's internal guidance and that the SOPs, without more, are insufficient to establish a

national standard of care.  (*Id.*) *See Varner*, 891 A.2d at 270.[5]   However, WMATA is incorrect

that he relies solely upon the SOPs and ultimately fails to articulate a national standard.  (*See*

Def.'s Renewed Mot. at 12.)  Although Berkowitz referenced WMATA's SOPs as a document

that set forth the national standard on which he relies (Berkowitz Dep. 34:13-34:19), his expert

report explains that WMATA's SOPs do not set the national standard, but rather reflect the

industry standard for similar transit agencies.   (Berkowitz Rep. at 6.)[6]  Specifically, he explains

that

> [t]his national standard of care is derived from industry studies and
> analysis intended to replicate recurring circumstances in the way
> that occupants use and interact with a bus environment to avoid
> injury.  Published standards for operators, such those [sic]
> provided by WMATA, are intended for distribution and use by bus
> operators to inform him/her how to identify potential injury
> conditions.

*Id*.   Indeed, the D.C. Circuit explicitly noted the evidentiary weight of this type of expert

testimony, which confirms that the "'[manuals] . . . embod[y] the national standard of care and

not a higher, more demanding one," and suggested that it would be sufficient.  *Briggs*, 481 F.3d

at 848 (quoting *Clark v. Dist. of Columbia,* 708 A.2d 632, 636 (D.C. 1997) (alternations in

original).  At a minimum, Berkowitz has "put forward a colorable basis to believe that his

---

[5] *Varner* notes, however, that although the SOPs do not *establish* the standard of care, they may
nonetheless be admitted as *evidence* of it.  *Id.*

[6] It is important to recognize that transportation systems for different cities may have different
needs depending on factors including the city's size. Therefore, to the extent that WMATA
suggests that a "one-size-fits-all" standard is necessary to meet the requirements of specificity
and articulability, this Court cannot agree.

testimony may satisfy the standards described above."  *Liser v. Smith*, 254 F. Supp. 2d 89, 103-04 (D.D.C. 2003).[7]

This finding is not undermined by WMATA's argument that Berkowitz' testimony is contrary to District of Columbia law simply because, at deposition, he indicated that WMATA bus drivers should not drive away from a bus stop if passengers are standing.  (Def.'s Renewed Mot. at 13-14.)  In his Rule 26(a)(2) report, he recognizes that this is not always true and proceeds to explain a bus driver's duties when driving while passengers are standing. (Berkowitz Rep. at 6 (explaining that drivers must assure themselves that passengers are safeguarded against injury from impending movement through "actual observation").  In any case, this point would not warrant summary judgment because, as explained above (*see supra* Section I), plaintiff's negligence claim is not based solely on the fact that that Bumpass drove while she was standing.

For these reasons, WMATA has not demonstrated that it is entitled to judgment as a matter of law on this basis.

**B.  Expert on Negligence**

To show a bus driver's negligence when pulling away from a bus stop, a plaintiff must adduce evidence "that the 'jerk' or 'sudden start' was of such unusual and extraordinary force that it could not reasonably be said to have happened in the ordinary operation of the vehicle." *Boyko v. WMATA*, 468 A.2d 582, 583-84 (D.C. 1983) (quoting *Wiggins v. Capital Transit Co.*, 122 A.2d 117, 117 (D.C. 1956)).  This degree of force "cannot be inferred from 'mere

---

[7] This is a relevant distinction because, although "the test for deciding a motion for summary judgment is essentially the same as that for a motion for a directed verdict," *Varner*, 891 A.2d at 270 (quoting *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 199 (D.C. 1991)), his testimony at trial, when subjected to direct and cross-examination, will provide an opportunity to resolve any ambiguity in his statements.

descriptive adjectives and conclusions'" alone. *Boyko*, 468 A.2d at 583-84 (quoting *Wiggins*, 122 A.2d at 118).  Courts have found it sufficient, however, where plaintiffs have supported their own testimony with statements from doctors providing "evidence concerning the injury itself" or other witnesses to the incident.  *Id.* at 584-85; *see, e.g.*, *Pazmino v. WMATA*, 638 A.2d 677, 680 (D.C. 1994).

To augment her testimony, plaintiff has proffered expert testimony to demonstrate that Bumpass deviated from the standard of care.  Her proposed expert witness, Jamie Williams, is a biomechanical engineer with over fifteen years of experience in biomechanics and orthopedics,[8] who will offer her opinion about the degree of torsional force that would have been necessary to produce an injury like Robinson's.  (*Id.* at 1-15.)  In particular, Williams will opine on the force that would have been necessary to break the grasp of an average person from the bus seat and the force exerted on Robinson's fibula bone as she fell.  (*Id.* at 12-13.)

WMATA argues that Williams' testimony is not helpful because her conclusions are based on an average person's grip strength—as opposed to Robinson's— and because she provides no evidence (*i.e.*, the speed of the bus, its rate of acceleration or deceleration, or whether it jerked) that would show that Bumpass was negligent.  (Def.'s Renewed Mot. at 15-17.)  Therefore, defendant argues, Williams' opinion does not help plaintiff surmount *Boyko*, 468 A.2d at 582.

The Court, however, finds that Williams' testimony regarding the degree of force necessary to break an average grip and explaining how Robinson's ankle was fractured may aid the jury in evaluating plaintiff's testimony.   In that sense, her testimony is similar to a doctor's

---

[8] Biomechanics is a subspecialty of bioengineering in which engineering mechanics are applied to understand basic biological processes related to the structure of bone and skeletal tissues. (Pl.'s Rule 26(a)(2) Statement at 9.)

opinion about the way that an injury occurred.  *See, e.g.*, *Brighthaupt v. WMATA*, No. 97-7217, 1998 U.S. App. LEXIS 28472, at *4 (D.C. Cir. Oct. 9, 1998)  (finding evidentiary weight in the fact that "[o]ne of Brighthaupt's treating physicians confirmed that . . . his injuries were consistent with 'pitching forward'").  Williams' testimony may be particularly helpful here since plaintiff is unable to provide witness accounts of the incident.   Ultimately, Williams' testimony could be "enough, when augmented by the descriptions of the bus's movement [or Robinson's grip] to support [a] jury's verdict" in her favor.  *Id*. at *5.[9]

## III.   ADDITIONAL ISSUES

Finally, in its opposition to defendant's renewed motion for summary judgment, plaintiff raises several issues related to discovery, including a challenge to the substitution of plaintiff's expert witness.  (Pl.'s Opp'n to Renewed Mot. at 11-13.)  These discovery disputes are not properly raised in a responsive filing to defendant's motion and plaintiff has not complied with the Court's rules.

Nonetheless and for the sake of efficiency, the Court will resolve one of these issues by permitting the substitution of Edward Harris, Service Director of Bus Operations for WMATA, for Ruby Conway, Assistant Superintendent of Bus Transportation Training, to provide expert testimony on the WMATA SOPs and Rules and Regulations.  This substitution is reasonable since Conway is unable to testify at deposition or trial due to serious medical concerns.  (*See*

---

[9] The testimony outlined in Williams' Rule 26(a)(2) report lies somewhere between that of *Boyko*, 486 A.2d at 585 (finding the testimony of the plaintiff and her doctor sufficient where it described "violent" motion inconsistent with normal operation of a bus), and that of *Johnson v. WMATA*, No. 90-7029, 1991 U.S. App. LEXIS 25141, at **6-7 (D.C. Cir. Oct. 21, 1991) (finding doctor's testimony insufficient where it showed that the injury was equally consistent with the normal operation of a bus).  Both of those cases were decided based on the experts' testimony at trial.  While the Court cannot find, at this stage, that plaintiff's evidence is not sufficient to support a jury's verdict, it may well reach a different conclusion at the close of plaintiff's case.

Def.'s Reply at 4; Def.'s Reply, Ex. 1 (email from defense counsel to plaintiff's counsel).)

Moreover, plaintiff will not be prejudiced because she was informed of the need for this

substitution (due to medical reasons) on February 27, 2012,[10] and the substance of the expert

testimony will be the same.  (*See id.*)   Therefore, the substitution of Harris will be permitted, but

WMATA must file an amended Rule 26(a)(2) statement, on or before May 8, 2012, to reflect any

changes and, if plaintiff wishes to depose Harris, it must take the deposition on or before May

21, 2012.

### CONCLUSION

For the foregoing reasons, the Court denies defendant's renewed motion for summary

judgment and motion to dismiss.  A separate order accompanies this Memorandum Opinion.


                              _____/s/_____
                              ELLEN SEGAL HUVELLE
                              United States District Judge

Date:   May 1, 2012

---

[10] Plaintiff initially noticed Conway's deposition on February 23, 2012.  (Pl.'s Opp'n to
Renewed Mot., Ex. 6 (email from plaintiff's counsel to defense counsel).)